## OPINION TO THE GOVERNOR.

### RENDERED BY THE JUSTICES OF THE SUPREME COURT IN THE MATTER OF THE PRACTICE OF OSTEOPATHY.

(1)　*Osteopathy.　Death Certificates.*

Persons who have received certificates to practice Osteopathy from the State Board of Health under cap. 1058, Pub. Laws, 1914, and who have registered under cap. 193 of the Gen. Laws, in the town clerk's office of the city or town in which they reside, their authority for so practicing, are legally entitled to sign death certificates in those cases where they were last in attendance professionally upon the deceased.

SUPREME COURT,

June 19, 1919.

*To His Excellency R. Livingston Beeckman, Governor of the State of Rhode Island and Providence Plantations:*

We have received from Your Excellency a request for our opinion upon the following question, viz.:

"Are the persons who have received certificates to practice Osteopathy from the State Board of Health under Chapter 1058 of the Public Laws of 1914, and who have registered, under Chapter 193 of the General Laws, in the Town Clerk's office of the city or town in which they reside, their authority for so practicing, legally entitled to sign death certificates in those cases where they were last in attendance professionally upon the deceased?"

We answer the question in the affirmative.

Chapter 1058, approved May 1, 1914, is entitled "An Act Regulating the Practice of Osteopathy and in Addition to and in Amendment of Chapter 193 of the General Laws." In Section 1 the practice of osteopathy is defined to be the treatment by manipulation of diseased or abnormal conditions of the human body. The act provides that authority to practice osteopathy shall be a certificate from the State Board of Health which shall be granted to any reputable person applying therefor who is a graduate from a school or college of osteopathy in good standing, and who shall pass an examination satisfactory to a board of three examiners approved by the State Board of Health. Section 6 is as follows: "Except as otherwise expressly provided in this act, all provisions of Chapter 193 of the General Laws and all acts in amendment thereof or in addition thereto shall apply to the practice of osteopathy and to persons practicing osteopathy within this state."

Chapter 193 of the General Laws, "Of the Practice of Medicine" is the general act by which it is provided that authority to practice medicine or surgery shall be a certificate from the State Board of Health. The act also gives

to the State Board of Health authority to refuse to issue certificates or to revoke any certificate which has been issued to any physician who is not of good moral character or who in the opinion of the Board is an unfit person to practice medicine.

By Section 8 of Chapter 193, penalties are provided for the unlawful practice or attempt to practice medicine or surgery or any of the branches of medicine or surgery.

It cannot be doubted that the practice of osteopathy as authorized by Chapter 1058 is the practice of medicine within the meaning of those words as used in Section 8, Chapter 193.  *State* v. *Mylod,* 20 R. I. 632; *Swarts* v. *Siveny,* 35 R. I. 1; *State* v. *Heffernan,* 40 R. I. 121.  The statute authorizes the licensed practitioner of osteopathy to make a diagnosis of diseased or abnormal conditions of the human body and to apply a remedy therefor.  This power of diagnosis is not restricted; having determined however the nature and the cause of the sickness, the practitioner is then restricted to the remedy for the ailment which must be confined to manipulation of the body; the method and the extent of the manipulation is left to the judgment of the practitioner.

Section 7, Chapter 121 of the General Laws, 1909, as amended by Section 2, Chapter 575, Public Laws, 1910, provides that in case of death the undertaker or embalmer who has charge of the body, shall file with the town clerk or registrar a certificate of death prepared in accordance with Section 3 of this chapter.  This section also provides that the medical certificate, which is a required part of the death certificate, shall state the cause of death in detail as specified in the statute and that "The medical certificate shall be made and signed by the physician, if any, last in attendance on the deceased, but whenever the body of a person is lying dead in any town or city, who has been unattended in his or her last sickness, by a physician registered to practice in this state, the town or city clerk, or in the city of Providence, the city registrar, shall call upon a registered physician, or

the medical examiner of the district in which the remains are lying to inquire into and to certify as to the cause and manner of death. . . . "

Is a registered practitioner of osteopathy, a physician registered to practice in this state within the fair meaning of these words in this section? We think that he is. There is no express and specific requirement in Chapter 1058 which requires an osteopath to register his certificate. The obligation to register is imposed by Section 2, Chapter 193, which is general in its terms and applies to all persons who practice medicine or surgery. The person registering under this section is required to subscribe and verify by oath an affidavit of his age, address, etc., and "the school or system of medicine to which he or she proposes to belong."

Section 1 of Chapter 193 provides as follows: "It shall be the duty of each town and city clerk to purchase a book of suitable size, to be known as the 'medical register' of each city or town, and to set apart one full page for the registration of each physician." The recognition in the sections referred to of the practitioner of osteopathy as a physician is clear and unmistakable. The osteopath is required to register and by Section 1 he is to be registered as a physician in the "medical register." All physicians get their authority to sign medical certificates in cases of death by the provisions of Chapter 193, of which Chapter 1058 is now a part. As the osteopaths are now authorized to practice medicine in a particular way, as they are required to be registered in the medical register and are subject to the disciplinary control of the Board of Health by the same general provisions of Chapter 193 as all doctors of medicine so-called, we think that the word *physician* in Section 2, Chapter 575, should properly be construed in its broader meaning to include osteopaths, and that as used in this part of the statutes it is not to be confined to its limited meaning of doctor of medicine. In some parts of the statutes the word *physician* undoubtedly does have the limited meaning of doctor of medicine and

not the broader meaning; as in Chapter 123, Section 54, by which it is provided that liquors are not to be sold, etc., except upon a physician's prescription, and in Section 17, Chapter 178, "Of Medicines and Poisons," where it is provided that any physician who shall prescribe certain drugs, etc. As osteopaths have no authority to give prescriptions or to prescribe drugs, it is manifest that the word *physician* in these clauses does not include a practitioner of osteopathy.

We think that the conclusion we have reached is strengthened by a consideration of the result if the other construction were adopted. In that case we would have this situation: The State by its examination and certificate has certified to the ability of the osteopath to discover the cause of the disease while the patient is alive; but upon the death of the patient, the osteopath then is to be held to be incompetent and unauthorized to state the cause of death. Such a construction is illogical, and its effect would be to impose in many instances unnecessary hardship and pain on the relatives of the deceased.

For the reasons stated we answer the question in the affirmative.

<div align="right">

C. FRANK PARKHURST,

WILLIAM H. SWEETLAND,

WALTER B. VINCENT,

CHARLES F. STEARNS,

ELMER J. RATHBUN.